IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

KENNETH JACKSON,          )    CIVIL ACTION NO. 9:16-1560-TMC-BM
)
)
         Plaintiff,      )
)
v.           )    **REPORT AND RECOMMENDATION**
)
NANCY A. BERRYHILL[1],     )
Acting Commissioner of Social Security,   )
)
         Defendant.     )
_____)

        The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein he was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Civil

Rule 73.02(B)(2)(a)(D.S.C.).

        Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI)[2] on March 31, 2014.  Plaintiff alleges disability as of September 15, 2014[3] due

---

    [1]On January 23, 2017, Berryhill became the Acting Commissioner of Social Security replacing Carolyn Colvin.  The Clerk is directed to change the Defendant to Nancy A. Berryhill, Commissioner of Social Security Administration, on the docket.

    [2] Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that []he was disabled during the insured period for DIB may still receive SSI benefits if []he can establish that []he is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, ** 3 (7th Cir. Jan. 6, 2005).  See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].  Under SSI, the claimant's entitlement to benefits (assuming they establish disability) begins the month following the
(continued...)



to post traumatic stress syndrome (PTSD), anxiety, sinusitis, high blood pressure, high cholesterol, depression, drug addiction, and erectile dysfunction. (R.pp. 51, 59). Plaintiff's applications for SSI and DIB were denied initially and upon reconsideration, following which he requested a hearing before an Administrative Law Judge (ALJ), which was held on December 4, 2015. (R.pp. 35-50, 94-98, 102-106, 109). The ALJ thereafter denied Plaintiff's claim in a decision issued January 5, 2016. (R.pp. 29-30). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-7).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence, and that this case should be reversed for an award of benefits, or in the alternative remanded to the Commissioner for further proceedings. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence

---

[2](...continued)
date of filing the application forward. Pariseau v. Astrue, No. 07-268, 2008 WL 2414851, * 13 (D.R.I. June 13, 2008).

[3]Plaintiff's applications originally had listed his disability onset date as June 28, 2013. At the hearing before the ALJ, Plaintiff amended his onset date to September 15, 2014. (R.pp. 43, 51, 59).



to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was fifty-two years old on his alleged disability onset date[4], has a greater than high school education and past relevant work experience as a land surveyor and program supervisor. (R.pp. 29, 39-40, 48). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for

---

[4]Although the ALJ refers to Plaintiff as being fifty-three on the date of his alleged disability, it appears that age calculation was from Plaintiff's testimony of his age at the hearing. (R.p. 39).



which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairment[5] of PTSD (R.p. 25), he nevertheless retained the residual functional capacity (RFC) for a full range of work at all exertional levels, but with certain nonexertional restrictions. Specifically, the ALJ found that Plaintiff was restricted to simple, repetitive tasks; he can have no contact with the public; he cannot perform work in a team setting; and he cannot work in a fast-paced environment. (R.p. 27). The ALJ further determined that, although the limitations caused by Plaintiff's impairments precluded him from performing his past relevant work, he could perform other representative occupations with these limitations, such as a small parts assembler (DOT # 706.684-022), electronics worker (DOT # 726.687-010), and laundry folder (DOT # 369.367-018), and was therefore not disabled. (R.p. 29-30, 48-49).

Plaintiff asserts that in reaching this decision the Commissioner erred because he failed to properly evaluate two treating physicians' opinions, and failed to give substantial weight to the VA rating decision that Plaintiff is 100% disabled. Plaintiff further contends that the Appeals Court erred in not remanding or reversing the ALJ's decision based upon a treating physician's statement submitted to the Appeals Council. After careful review and consideration of the evidence and arguments presented, and for the reasons set forth and discussed hereinbelow, the undersigned is constrained to agree with the Plaintiff that the Commissioner has committed reversible error in the

---

[5]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

4



evaluation of his applications, thereby requiring a remand for further consideration of Plaintiff's claims.

## I.

Plaintiff has been diagnosed with both PTSD and Bipolar Disorder.  (R.pp. 362, 780). Plaintiff has primarily received treatment for his condition from  Dr. Angela Court at the Ralph Johnson VA Medical Center.  See generally, (R.pp. 400, 419, 429, 443, 447, 463, 466, 476, 513, 520, 804).  However, Plaintiff has also been seen by other physicians, who have confirmed his diagnosis. See (R.pp. 350-351 (Dr. Milton Foust); 387, 403, 415, 458 (Dr. John Medaglia); 696 (Dr. Norman Farley); 815 (Molli Collacott, MSW, LCSW).  In his decision, the ALJ does not specifically address Plaintiff's Bipolar Disorder, assigning Plaintiff's PTSD as being his only severe impairment.  (R.p. 25).

In finding that Plaintiff's condition was not disabling, the ALJ accorded significant weight to the opinion of state agency physician Dr. Derek O'Brien, who after review of Plaintiff's medical records on January 12, 2015 opined that Plaintiff was moderately limited in his ability to interact appropriately with the general public, but was not otherwise significantly limited.  (R.pp. 28, 76, 87).  The ALJ's only comment with respect to Dr. Court's findings was to state that at a mental status examination performed on October 9, 2014, Dr. Court had noted generally unremarkable findings while encouraging Plaintiff to continue his activities and "work as able".  (R.p. 28).  A review of the October 9, 2014 examination itself shows that Dr. Court found that Plaintiff had a constricted affect, displayed a "frustrated" mood, was on a mood stabilizer, was advised of the steps to take in the event of an emergency, and was to return in one month "for medication management and supportive treatment".  (R.p. 780).  No other discussion or analysis of Dr. Court's longitudinal



treatment records is provided, nor does the ALJ ever indicate what particular weight he gives to Dr. Court's opinions and findings, even though she is a treating physician whose opinion would ordinarily be entitled to great weight. Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996)[Noting importance of treating physician opinion]. Indeed, a treating source's opinion on the nature and severity of an impairment is entitled to "controlling weight" where it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. Further, the ALJ is required to provide an explanation in the decision for what weight is given a treating source's opinion and, if rejected, why it was rejected, a requirement (as previously noted) that was clearly not fulfilled by the ALJ in this case. See 20 C.F.R. § § 404.1527(c)(2) and 416.927(c)(2).

This omission is particularly important in this case because as part of his appeal to the Appeals Council, Plaintiff submitted a letter from Dr. Court dated March 23, 2016 wherein Dr. Court noted that she had been treating the Plaintiff for approximately thirteen (13) years, and that he suffers from PTSD, Bipolar Disorder and depression. After outlining Plaintiff's deficiencies, including problems with concentration, easy distractability, and other impairments, Dr. Court stated that "[d]ue to the limitations he suffers as a result of his disorders and symptoms, it is my opinion that he is disabled and can not obtain or maintain a job." (R.p. 8). Dr. Court further opined that if Plaintiff attempted to obtain a job, "he would be off task more than 20% of the time due to his lack of concentration, that he would need break periods at least every hour, and that he would miss work more than 4 days a month due to symptoms, panic attacks, and/or side effects of medication." (R.p. 8). Finally, and significantly, Dr. Court also states in the letter submitted to the Appeals Council that the conditions and limitations set forth in her letter were present on or before January 8, 2016, the date



of the ALJ's decision. Id.[6]  However, notwithstanding Dr. Court's specific statement that the

conditions and limitations set forth in her March 23, 2016 letter to the Appeals Council "were present

on or before January 8, 2016", in rejecting this opinion and upholding the ALJ's decision the Appeals

Council stated:

> The Administrative Law Judge decided your case through January 8, 2016.  This new
> information is about a later time.  Therefore, it does not affect the decision about
> whether you were disabled beginning on or before January 8, 2016.

(R.p. 2); see (R.p. 8).

This finding was clear error under the facts of this case.

Pursuant to 20 C.F.R. §404.970

> (b) If new and material evidence is submitted, the Appeals Council shall consider the
> additional evidence . . . where it relates to the period on or before the date of the
> administrative law judge hearing decision.  The Appeals Council shall evaluate the
> entire record including the new and material evidence submitted if it relates to the
> period on or before the date of the administrative law judge hearing decision.  It will
> then review the case if it finds that the administrative law judge's action, findings, or
> conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).

In order to be "new" evidence, the evidence must not be "duplicative or cumulative"; and in order to

be "material", there must be a "reasonable possibility that it would have changed the outcome".

Wilkins v. Secretary of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).  This evidence was

obviously "new", since it was a specific opinion addressing Plaintiff's limitations and the effect those

---

[6]Dr. Court is not the only physician to have reached this conclusion.  On May 9, 2014, Dr. Farley opined that based on Plaintiff's symptoms and diagnosis "it is unlikely an employer will hire him" (R.p. 366), while in medical notes dated February 24, 2015, Dr. Sabrina O'Kennon opined that "it appears patient's symptom profile prevents him from obtaining gainful employment at present". (R.p. 909).  The ALJ does not discuss either one of these medical opinions in his decision. Cf. Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981) [listing cases remanded because of failure to provide explanation or reason for rejecting or not addressing relevant probative evidence].



limitations would have on Plaintiff's ability to work from his treating physician, an opinion which the ALJ did not have before him at the time of his decision. It was also "material", as by its own wording it is an opinion of Plaintiff's condition and limitations with respect to specific issues addressed by the ALJ in his RFC findings prior to the date of the ALJ's decision, and which directly contradict many of those findings.[7]

The proper manner and procedure for the handling of new evidence submitted to an Appeals Council was discussed extensively by the Fourth Circuit in <u>Meyer v. Astrue</u>, 662 F.3d 700 (4th Cir. 2011). When a claimant requests review of an ALJ decision, the Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to the ALJ. Where a claimant submits additional evidence that was not before the ALJ when requesting review by the Appeals Council, if the evidence is new and material the Appeals Council is the evaluate the entire record including the new and material evidence to see if it warrants any change in the ALJ's decision. If, after this evaluation, the Appeals Council finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record, it will grant the request for review and either issue its own decision on the merits or remand the case to the ALJ. Conversely, if upon consideration of the evidence, including any new and material evidence, the Appeals Council finds that the ALJ's action, findings or conclusions are not contrary to the weight of the evidence as a whole, the Appeals Council can simply deny the request for review. <u>See generally</u>, <u>Meyer</u>, 662 F.3d at 704-705. That is what the Appeals Council did in this case, based on

---

[7]Not only does this opinion from Plaintiff's treating physician contradict the findings and conclusions of the ALJ in his decision, but it states that it is based on Dr. Court's evaluations of the Plaintiff over a several year period of time, which (as previously noted) were not discussed or analyzed by, accepted or rejected, or assigned any weight by the ALJ in his decision.



its erroneous finding that Dr. Court's opinion did not relate to Plaintiff's condition prior to the date of the ALJ's decision. (R.p. 2).

As was noted in <u>Meyer</u>, courts should affirm an ALJ's denial of benefits after reviewing new evidence presented to the Appeals Council where, even with this new evidence, substantial evidence support the ALJ's findings. However, reversal is required if on consideration of the record as a whole, the court "simply cannot determine whether substantial evidence supports the ALJ's denial of benefits . . . ." <u>Meyer</u>, 662 F.3d at 707. In <u>Meyer</u>, such was found to be the case where the new evidence was evidence from a treating physician that provided evidence the ALJ said in his decision he did not have, and which corroborated other evidence that the ALJ had rejected. The fact situation is similar here. The ALJ found Plaintiff to be not disabled after giving significant weight to the opinions of a non-examining physician, while only briefly mentioning one examination by Plaintiff's treating physician. The ALJ failed to further analyze this treating physician's records or make any findings with respect to those records and opinions, in violation of 20 C.F.R. § § 404.1527(c)(2) and 416.927(c)(2) [requiring the ALJ to provide an explanation in the decision for what weight is given a treating source's opinion and, if rejected, why it was rejected]. The Appeals Council then itself also improperly rejected the opinion of the treating physician on a ground that was clearly erroneous based on the treating physician's clear statement in her opinion that it applied to the period on or *before* the date of the ALJ's decision. (R.p. 8). Hence, "[o]n consideration of the record as a whole, [this court] simply cannot determine whether substantial evidence supports the ALJ's" decision, as "no fact finder has made any findings as to [the new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative



9

value of competing evidence is quintessentially the role of the fact finder.  We cannot undertake it in the first instance".  Meyer, 662 F.3d at 707.

Therefore, this case must be reversed and remanded for a proper consideration of the medical evidence, in particular the opinion of the treating physician Dr. Court.  See also, n. 6, supra.

## II.

Plaintiff also faults the ALJ's consideration of his VA disability rating in reaching his decision.  While a VA disability determination is not binding on the SSA, Plaintiff is nonetheless correct that such a determination is ordinarily entitled to substantial weight.  See Bird v. Commissioner of Social Security, 699 F.3d 337, 343-344 (4th Cir. Nov. 9, 2012) ["SSA must give substantial weight to a VA disability rating"].  Further, although an ALJ "may give less weight to a VA disability rating [if a finding is made that] the record before the ALJ clearly demonstrates that such a deviation is appropriate;" Bird, 699 F.3d at 343; it is incumbent upon the ALJ to explain his or her rationale if they do so.  See SSR 06-03P, 2006 WL 2329939, at * 7 (SSA) [ALJ "should explain the consideration given to [the VA disability determination] in notice of decision . . ."]; cf. Kowalske v. Astrue, No. 10-339, 2012 WL 32967, at * 4 (W.D.N.Y. Jan. 6, 2012)[Noting that since the VA determination is itself entitled to at least some evidentiary weight in addition to the other record evidence, the adjudicator should explain the consideration given to this decision]; Jamiah v. Astrue, No. 09-1761, 2010 WL 1997886, at * 16 (N.D.Ga. May 27, 2010)[Noting that due to the significance of a VA determination, the ALJ must state specifically the weight accorded the evidence and the reason for his decision].

The ALJ did not comply with this requirement in this case.  On September 3, 2014, Plaintiff received a combined service-connected evaluation rating of 70% from the VA due to his



10

disability rating of 70% for PTSD, effective May 9, 2014. (R.pp. 640-645).[8]  However, at the December 2015 administrative hearing, Plaintiff testified that he was currently receiving 100% disability from the VA, and that the 70% figure from the May 2014 VA rating was only for the PTSD rating. (R.p. 41).  However, although the ALJ questioned Plaintiff regarding his testimony that his current VA rating was 100% based upon a combination of impairments, the ALJ did not discuss the 100 % of disability alleged by the Plaintiff at the hearing in his decision, or explain why he was or was not accepting or discounting that testimony, in direct violation of <u>Bird</u>.[9]  <u>See</u> (R.pp. 28, 640-645).  Rather, the ALJ simply stated that he "accorded little weight to the VA's disability rating as it is inconsistent with the medical records that routinely reflect nondisabling GAF[10] scores.  While the claimant's impairment has somewhat limited his ability to perform gainful activity, the foregoing residual functional capacity accommodates his impairment by limiting him to work that does not require interacting with others or fast-paced production." (R.p. 28).

---

[8]It appears that certain pages are missing from the VA's opinion. (R.pp. 643-644).

[9]The only reference by the ALJ to the VA rating in the decision is where he discusses the September 2014 70% disability rating. (R.p. 28).

[10]GAF is the abbreviation for Global Assessment of Functioning. "Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient." <u>Morgan v. Commissioner of Soc. Sec. Admin.</u>, 169 F.3d 595, 597 n.1 (9th Cir. 1999). The ALJ had previously stated in his opinion that the Plaintiff "was assessed with a . . . ["GAF"] score of 57, which typically denotes nondisabling symptoms." (R.p. 28). However, a GAF of 51 to 60 indicates that moderate symptoms are present; <u>Perry v. Apfel</u>, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); <u>Matchie v. Apfel</u>, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000); and The ALJ himself found that Plaintiff had moderate difficulties in social functioning and with regard to concentration, persistence, or pace (R.p. 26), limitations with regard to CPP that were not properly accounted for in the hypothetical to the VE. <u>See</u> discussion, <u>infra</u>. In any event, it should also be noted that the fifth edition of the Manual (DSM-V) has removed the GAF score scale from its current edition because it lacks conceptual clarity and is an unreliable psychometric measurement. <u>See</u> <u>e.g.</u>, <u>Finley v Colvin</u>, No. 12-7908, 2013 WL 6384355, at *23 n. 9 (S.D.W.Va. Dec. 5, 2013).



Although the VA's definition of disability and procedures employed to evaluate a claimant's degree of disability are different than those prescribed by the SSA, that is not itself a basis on which to disregard the VA's findings. Bird, 699 F.3d at 343-344. Here, the ALJ did not cite Bird in his decision, offered only a conclusory reference to GAF scores for why he chose to give the VA's rating only "little weight", which deviated from the general requirement in Bird that VA ratings are to be given substantial weight; Id., at 343 [If ALJ does not give "substantial weight" to VA decision, he must "**clearly** demonstrate[ ] that such a deviation is appropriate"](emphasis added); and never discussed Plaintiff's testimony that his overall disability rating was actually 100%, not 70%, or considered whether Plaintiff would be entitled to disability based on such a rating. See SSR 06-03P, at * 7 [ALJ must explain consideration given to VA disability determination]. This becomes particularly important in this case because, again, the Plaintiff submitted evidence to the Appeals Council addressing this very issue. Specifically, Plaintiff submitted a letter to the Appeals Council from the VA confirming his 100% (not 70%) disability rating, which stated that Plaintiff was considered by the VA to be 100% totally and permanently disabled due to his service-connected disabilities effective September 15, 2014, which is the same date as his alleged disability onset date for this case. (R.p. 281). However, as was the case with Plaintiff's new evidence from his treating physician (discussed, supra), the Appeals Council failed to properly address this new evidence. (R.p. 2).[11]

---

[11]The Appeals Council did at least address Plaintiff's new evidence from his treating physician, albeit incorrectly. It did not, however, ever specifically mention the new evidence from the VA, instead stating only that they had reviewed Plaintiff's new evidence and "concluded that the additional evidence does not provide a basis for changing the Administrative Law Judge's decision". (R.p. 2).



Although the Commissioner does not dispute that both the ALJ and the Appeals Council failed to discuss the VA's 100% disability rating,[12] the Commissioner argues that the impairment rating for Plaintiff's mental impairments (70%) remained the same as the percentage considered by the ALJ in his decision. (R.p. 28). The Commissioner then goes on to argue that the after-acquired letter reflecting the 100% disability rating did not provide any further explanation to dispute Plaintiff's testimony that the other 30% was based on an issue with his finger and chemical sensitivity. See Defendant's Brief, p. 19. However, these arguments are merely *post hoc* rationalizations by the Commissioner to justify the ALJ's decision in this case. They do not address the fact that Plaintiff actually had a 100% disability rating from the VA at the time of the decision, nor did the ALJ himself provide the analysis and findings relating to Plaintiff's 100% disability rating as are argued by the Commissioner in her brief. Nester v. Astrue, No. 08-2045, 2009 WL 349701 at * 2 (E.D. Feb. 12, 2009)[Noting that the Court "may not consider *post hoc* rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."]. It is for the ALJ, not this Court, to compare and contrast this evidence and determine the weight to be accorded Plaintiff's *actual* VA rating in conjunction with the evidence, and he did not do so. Jamiah, 2010 WL 1997886, at * 16 [Noting that due to the significance of a VA determination, the ALJ must state specifically the weight accorded the evidence and the reason for his decision]; Bird, 699 F.3d at 343 [If ALJ does not give "substantial weight" to VA decision, he must "clearly demonstrate[ ] that such a deviation is appropriate"]; cf. Kowalske, 2012 WL 32967, at * 4 [Noting that since the VA determination is itself

---

[12]To the extent the Commissioner may argue that the ALJ's decision was proper because no additional supporting documentation regarding Plaintiff having a 100% VA disability rating was provided, there is also no indication that, in response to Plaintiff's testimony, any such additional documentation was ever requested. Cf. Cook v. Heckler 783 F.2d 118, 1173 (4th Cir. 1986)[The ALJ has a duty to fully and fairly develop the record].



entitled to at least some evidentiary weight in addition to the other record evidence, the adjudicator should explain the consideration given to this decision].

As such, the ALJ's minimal discussion of the VA rating in his decision is not sufficient to "'clearly demonstrate' that ... a deviation from a finding of substantial weight is appropriate." Nester, 2009 WL 349701, at * 2 (quoting Bird, 699 F.3d at 343). Therefore, this action should be remanded to the Commissioner for a more proper weighing of Plaintiff's *correct* VA disability rating pursuant to the methodology outlined in Bird. Cf. Rosales v. Colvin, No. 14–4265, 2015 WL 9598864, at *10, (Dec. 16, 2015)[recommending remand for assessment of VA disability rating in accordance with the Bird standard], adopted by 2016 WL 55278 (D.S.C. Jan. 5, 2016), Lawson v. Colvin, No. 14–4662, 2015 WL 7769234, at *4 (Nov. 17, 2015)[same], adopted by 2015 WL 7776897 (D.S.C. Dec. 2, 2015); Sims v. Colvin, No. 14–3005, 2015 WL 5474760, at *6 (D.S.C. Sept. 17, 2015) [remanding for evaluation of VA ratings in accordance with the Bird standard]; Cobbs v. Colvin, No. 12–3472, 2014 WL 468928, at *8 (D.S.C. Feb. 4, 2014) [same].

### III.

Finally, after careful consideration of the record and relevant case law, the undersigned finds that the ALJ's hypothetical to the VE was flawed, and that the decision must therefore also be reversed and remanded for further consideration of Plaintiff's claims on that basis.[13]

After review of the medical evidence and consideration of the subjective testimony presented at the hearing, the ALJ found that Plaintiff had a severe mental impairment (PTSD) which resulted in, inter alia, moderate difficulties with regard to his ability to maintain concentration,

---

[13]Since this issue was not raised and/or addressed by the parties, the Court addresses it so that any errors regarding the hypothetical may be drawn to the ALJ's attention and addressed upon remand.



14

persistence, or pace. (R.p. 26). However, although the ALJ found that Plaintiff had moderate restrictions with respect to concentration, persistence, or pace, he failed to then properly account for this restriction in his RFC determination. Specifically, the ALJ only limited Plaintiff's RFC to the performance of simple, repetitive tasks; no contact with the public; he cannot perform work in a team setting; and he cannot work in a fast-paced environment. (R.p. 27).

Restricting a claimant like the Plaintiff to simple, repetitive work in order to account for mental impairments, to include a moderate restriction with respect to concentration, persistence or pace, was an RFC formula that had generally found support in the case law prior to 2015. Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [Finding that by restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; McDonald v. Astrue, 293 F. App'x 941, 946-47 (3d Cir. 2008) [noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks]. However, in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that "an ALJ does not account 'for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638, quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). Mascio held that the ability to perform simple work is not the same as having the ability to *stay on task* during a workday, which is the limitation that would account for a claimant's impairment in concentration, persistence or pace. Mascio, 780 F.3d 638.

Therefore, in light of Mascio, it is now the law in this Circuit that an ALJ's limitation of a Plaintiff's RFC to simple or repetitive tasks does not by itself take into account an inability "to



sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3).[14]   Rather, the ALJ's limitation to simple, repetitive work primarily addresses the complexity of the work, not Plaintiff's ability to stay on task.  See Mascio, 780 F.3d at 638; Salmon v. Colvin, No. 12-1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) [noting that "the Fourth Circuit made clear that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine, tasks or unskilled work."] (citations and quotations omitted); cf. Straughn v. Colvin, No. 14-200, 2015 WL 4414275, at *4 n.5 (M.D.N.C. July 20, 2015) [reasoning that the ALJ "did not address how the RFC's limitation to 'simple, routine' tasks addressed his finding of 'mild limitations with concentration, persistence

---

[14]Listing 12.00 explains, in part:

Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings. In addition, major limitations in this area can often be assessed through clinical examination or psychological testing. Wherever possible, however, a mental status examination or psychological test data should be supplemented by other available evidence.

****

In work evaluations, concentration, persistence, or pace is assessed by testing your ability to sustain work using appropriate production standards, in either real or simulated work tasks (e.g., filing index cards, locating telephone numbers, or disassembling and reassembling objects). Strengths and weaknesses in areas of concentration and attention can be discussed in terms of your ability to work at a consistent pace for acceptable periods of time and until a task is completed, and your ability to repeat sequences of action to achieve a goal or an objective.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3).



or pace.' Thus, the ALJ's decision may also run afoul of the recent decision in <u>Mascio</u>"] (citation and quotation omitted).

Here, the ALJ failed to adequately address this limitation (to "stay on task") in light of <u>Mascio</u> in either his RFC finding or in his hypothetical to the VE. (R.pp. 27, 30, 48-49). Therefore, the ALJ's reliance on the VE's testimony that Plaintiff could perform the jobs identified was error, as the hypothetical on which this testimony was based did not address this limitation. <u>See Walker v. Bowen</u>, 889 F.2d 47, 50-51 (4th Cir. 1989) [In order for a vocational expert's opinion to be helpful and relevant, it must be "in response to proper hypothetical questions which thoroughly set out all of claimant's impairments"]; <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1492 (10th Cir. 1991) [hypothetical question submitted to the VE must state the claimant's impairments with precision].

Similarly, limiting of Plaintiff's contact with the public and to no work in team settings along with limitations on job related decisions deals largely with workplace adaptation, rather than concentration, pace, or persistence. <u>See McPherson v. Colvin</u>, No. 16-1469, 2016 WL 5404471 at * 8 (E.D.Pa. Sept. 28, 2016)[where the court rejected that moderate restrictions in concentration, persistence, and pace were accommodated by a hypothetical to a VE that only included: 1) the performance of routine, repetitive tasks; 2) a low stress environment (defined as no frequent independent decision making required and no frequent changes in the work setting); and 3) no public interaction and occasional interaction with coworkers and supervisors](citing to <u>Varga v. Colvin</u>, 794 F.3d 809, 815 (7th Cir. 2015)); <u>Knight v. Commissioner</u>, No. 15-1512, 2016 WL 4926072 (D.S.C. Sept. 16, 2016)[The ALJ's limiting the hypothetical to 'unskilled work with no direct interaction with the public; only occasional team type interaction with coworkers; [who] should not be required to



17

adapt to greater than simple, gradual changes in the workplace' did not account for the Plaintiff's moderate limitation in concentration, persistence, or pace].

With respect to the remaining restriction placed on the Plaintiff, that he engage in "no fast-paced environment" (R.p. 27), federal district courts in the Fourth Circuit have split on whether a restriction to "non-production" work adequately accounts for a moderate limitation in CPP following Mascio. See Bryan-Tharpe v. Colvin, No. 15-272, 2016 WL 4079532 at * (M.D.N.C. July 29, 2016)(citing collecting cases); see also Wilson v. Colvin, No. 2:14-3209-TLW-MGB, 2016 WL 625088 at * 5 (D.S.C. Jan. 15, 2016)(unpublished)[holding restriction to "nonproduction work, no assembly line production, or high speed manner, . . . [s]tanding alone, . . .does not account for a limitation in [CPP]"), recommendation adopted, 2016 WL 613891 (D.S.C. Feb. 16, 2016)(unpublished).  However, in this case, the ALJ did not limit Plaintiff to nonproduction work or no assembly line work.  Rather, the ALJ's additional limitation (as set forth in his hypothetical to the VE) was that Plaintiff was prohibited from working in a "fast-paced" production environment. As such, the hypothetical in this case is similar to the mental restrictions set forth in the hypothetical in Varga, where the ALJ instructed the VE to assume an individual with Varga's vocational profile (age, education, and work experience) who was able to perform

> simple, routine, or repetitive tasks in a work environment . . . free of fast paced production requirements, involving only simple work related decisions with few if any work place [sic] changes and no more than occasional interaction with coworkers or supervisors.

Varga, 794 F.3d at 812.

The Seventh Circuit in Varga held that a restriction from performing fast paced production jobs did not account for moderate restrictions in CPP.  Varga, 794 F.3d at 815 [A restriction to work "free of fast paced production requirements" did not account for Plaintiff's



moderate deficits in CPP, because the ALJ failed to define "fast paced production."]. The ALJ here also did not define "fast paced" work. Therefore, while that limitation may address Plaintiff's concentration problems, it does not appear to address Plaintiff's ability to stay on task for an 8-hour workday. In fact, when the VE was specifically asked whether Plaintiff would be able to perform the jobs identified if he would be "off task" for 20% of the workday, the VE answered that he would not. (R.p. 49).[15]

Hence, as neither the ALJ's RFC assessment nor the ALJ's hypothetical question to the VE address Plaintiff's ability to stay on task, the court is left to guess how the ALJ accounted for this ability (or inability) despite finding that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. "Remand thus is appropriate." Carr v. Colvin, No. 15-685, 2016 WL 4662341, at *10 (D. Md. Sept. 7, 2016)[Finding that the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to the VE to only occasional contact with supervisors, co-workers, and the public accounts for Plaintiff's moderate difficulties in social functioning,[16] but does not account for Plaintiff's moderate difficulties in maintaining concentration,

---

[15]It is further noted that although the ALJ asked the VE if a hypothetical worker could perform the jobs identified if they would be off task 20% of the workday (to which the VE answered "no"), he did not assign this limitation to the Plaintiff. Additionally, Dr. Court's letter submitted to the Appeals Council stated that if Plaintiff attempted to obtain a job, "he would be off task more than 20% of the time due to his lack of concentration, that he would need break periods at least every hour, and that he would miss work more than 4 days a month due to symptoms, panic attacks, and/or side effects of medication." (R.p. 8).

[16]The ALJ found that Plaintiff had moderate difficulties in social functioning in this case, and accounted for Plaintiff's moderate social limitations by restricting him to no contact with the general public and not performing work in a team setting. (R.pp. 26-27).



persistence, or pace].[17]    As such, "it is not entirely clear how the evidence aligns with the necessary functions, which is a required showing." See Miller v. Colvin, No. 15-443, 2016 WL 3679292 at **4-5 (W.D.N.C. July 11, 2016)(citing Mascio, 780 F.3d at 636; SSR 96–8p, 1996 WL 374184, at *7).

While it may be that the ALJ will find, based on the evidence and facts of this case, that Plaintiff's moderate impairment in being able to concentrate and stay on task would not affect his ability to perform the work identified in the decision; see Mascio, 780 F.3d at 638 [noting that the ALJ may be able to explain why a moderate concentration, persistence, or pace limitation did not translate into a limitation in the RFC  ("[f]or example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the [VE]"), but finding that remand was appropriate because the ALJ gave no explanation]; he did not make that determination or finding in his decision, and this Court may not do so in the first instance.  Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) [Court cannot affirm a decision on a ground that the ALJ did not herself invoke in making the decision].

Therefore, the decision should also be reversed and remanded for consideration of Plaintiff's RFC in compliance with Mascio.

---

[17]This case therefore stands in contrast to cases where the decision has been upheld because the ALJ specifically addressed the claimant's ability to stay on task notwithstanding the claimant's mental limitations. Cf. Falls v. Colvin, No. 14-195, 2015 WL 5797751, at * 7 (D.S.C. Sept. 29, 2015) ["As opposed to the hypothetical in Mascio, which said nothing about the claimant's mental limitations, the ALJ's hypothetical in this case accounted for each of Plaintiff's mental limitations. The ALJ also accounted for Plaintiff's limitations in the area of concentration when determining Plaintiff's residual functional capacity.  The ALJ noted Plaintiff's mental limitations but found that the Plaintiff could concentrate, persist and work at pace to do simple, routine, repetitive work at 1-2 step instructions for extended periods say 2-hour periods in an 8-hour day"].



## IV.

With respect to any remaining claims of error asserted by the Plaintiff, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

### Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for a reconsideration of Plaintiff's applications as set forth hereinabove, and for such further administrative action as may be necessary.  See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 15, 2017
Charleston, South Carolina

21

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

